IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3210-BO

GERALD WAYNE TIMMS,                     )
        Plaintiff,                )
                                  )
                                  )
        v.                        )                 **ORDER**
                                  )
WARDEN TRACY JOHNS,                     )
        Defendant.                )

Gerald Wayne Timms ("plaintiff" or "Timms") filed this suit pursuant to Bivens v. Six

Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Timms names the

former warden Tracy Johns of Federal Correctional Institute at Butner, North Carolina, as defendant

to this action. On September 24, 2012, this court allowed in part, and denied in part, defendants'

partial motion to dismiss. Specifically, the court denied the motion to dismiss as to the claims of the

right to marry, disciplinary actions, restrictions on visitation, commissary, placement into

segregation, the monitoring of email and telephone, censorship of his general and legal mail, limited

recreational opportunity, and subjection of housing searches. Order, D.E. 36.

Now before the court are multiple motions filed by Timms: a motion for discovery [D.E. 47],

a motion for summary judgment, or in the alternative, a motion for declaratory judgment [D.E.48],

a motion for the court to order person to conduct deposition [D.E. 53], a motion to compel discovery

[D.E. 54], a motion to oppose extensions of time [D.E. 63], a motion to schedule a trial [D.E. 66],

a motion for the court to determine the efficiency of the defendant's responses [D.E. 67], a motion

to subpoena witnesses [D.E. 68], and a motion for entry of default [D.E. 69]. Defendant has filed

a motion to dismiss, or alternatively for summary judgment [D.E. 74]. The court finds summary

judgment for defendant appropriate in this matter for the reasons set out below.

As background, when Timms filed this action he was a civil detainee awaiting a hearing on the government's petition for his commitment pursuant to 18 U.S.C. § 4248., filed this action. D.E.1 and amendments thereto. On October 18, 2012, Timms was committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4248. Timms, 5:08-HC-2156-BO, D.E. 134-135. The Fourth Circuit later affirmed the civil commitment. Id., D.E. 146.

The court shall rule on defendant's pending motion as one for summary judgment. Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

In support of the motion for summary judgment, defendant asserts the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified

2

immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. [1]

Furthermore, as previously set out and as a general matter, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 321–22 (1982). In Youngberg, the Supreme Court considered the substantive due process rights of involuntarily committed mentally retarded persons and held that they have a right to "conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these conditions." 457 U.S. at 324. This standard has been extended to those committed because they have been found to be sexually violent. Allison v. Snyder, 332 F.3d 1076, 1081 (7th Cir. 2003).

Thus, while Timms may not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979), he nonetheless may be subjected to conditions within the bounds of professional discretion that place restrictions on his personal freedoms. Youngberg, 457 U.S. at 321–22; see also Marten v. Henry, 2010 WL 2650547 *2 (W.D. Wash. June 2, 2010) (noting that "[a] person who is the subject of involuntary civil commitment is not entitled to exercise his constitutional rights in the same manner as other citizens.").

---

[1] In Pearson, the Supreme Court overruled the mandatory two-step sequence adopted in Saucier v. Katz, 533 U.S. 194 (2001). See Pearson, 555 U.S. at 236.

3

i.     Right to Marry

To begin, the court allowed Timms to amend his complaint to include a First Amendment claim that he has been denied the right to marry [D.E. 20]. However, as correctly argued by defendant, Timms does not now argue that he plans to marry Ms. Adkins, nor any other individual and the claim is MOOT. See Mem. in Supp. D.E. 75. The court further holds that on full review of Timms' response [D.E. 79] to the motion, he does not contest the defense of mootness [D.E. 79] or even address the issue of his right to marriage. Thus, the claim is MOOT and dismissed.

ii.     Disciplinary actions, restrictions on visitation, commissary, telephone use and
       segregation

Timms argues that he has been subjected to disciplinary actions and therefrom received restrictions on visitation, commissary, and telephone use. Timms also states that because of some of the disciplinary infractions he received segregation.[2] Committed and Treatment Program inmates, such as Timms, are subject to BOP Program Statement 5270.09, Inmate Discipline Program, which was implemented for the purpose of ensuring the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing BOP staff to impose sanctions on inmates who commit prohibited acts. See Andrews Decl., at ¶ 7. Federal regulations provide that this disciplinary program applies to sentenced and unsentenced inmates in Bureau custody, in addition to sentenced and unsentenced inmates designated to any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons. 28 C.F.R. § 541.2.

---

[2]The court notes that Timms states his allegations of segregation are the result of sanctions as a result of BOP inmate rules. Timms' Deposition at 17-22.

4

Furthermore, BOP Program Statement 5270.09 states that the Inmate Discipline Program applies "to all persons in the custody of the Federal Bureau of Prisons or Bureau contract facilities, including . . . persons held as witnesses, detainees, or otherwise." Andrews Decl., at ¶ 8. As stated above, Timms is a civil detainee under the provisions of § 4248.

Prior to Timms' civil commitment, he served a 100-month term of imprisonment with the BOP for receipt of material by mail involving the sexual exploitation of children in violation of 18 U.S.C. § 2252A(a)(2). Id. at ¶ 4. Timms completed serving this term of imprisonment on November 10, 2008, but remained in federal custody pending his civil commitment hearing. Since that date, Timms has been subject to BOP disciplinary proceedings on fourteen occasions. Id. at ¶ 9.

On November 25, 2008, Timms appeared before the Unit Disciplinary Committee ("UDC") for possessing an unauthorized item. See Defendant's Ex. 5 (SENTRY-generated Inmate Discipline Data Chronological Disciplinary Record as of 08-27-2013, Gerald Wayne Timms, Reg. No. 54292-004). The UDC found that Timms committed the prohibited act, and sanctioned him to loss of telephone privileges and the loss of full commissary privileges for 30 days. Id. at 4.

On March 4, 2009, Timms appeared before the UDC for interfering with a staff member in the execution of their duties. Id. at 4. The UDC found that Timms committed the prohibited act, and sanctioned him to loss of commissary privileges for 180 days, loss of telephone privileges for 180 days and loss of visitation privileges for 180 days. All of these sanctions were served concurrently. Id. at 4.

On March 17, 2009, Timms appeared before the UDC for using the telephone for other than a legal activity (abusing the phone in a manner which circumvents the ability of staff to monitor frequency of telephone use, content of the call, or the number called). Id. at 4. The UDC found that

5

Timms committed the prohibited acts, and sanctioned him to 270 days loss of visiting, telephone, and commissary privileges to run consecutively with any unexecuted sanction from his March 4, 2009 offense. Id.

On June 17, 2009, Timms appeared before the UDC for exchanging money for contraband and telephone abuse. Id. at 4. The UDC found that Timms committed the prohibited act, and sanctioned him to 365 days loss of visiting, telephone, and commissary privileges to run consecutively with any unexecuted sanction from his March 17, 2009 offense. Id.

On July 28, 2009, Timms appeared before the UDC for possessing an unauthorized item. Id. at 3. The UDC found that Timms committed the prohibited act, and sanctioned him to 90 days loss of loss of personal property. Id.

On March 24, 2010, Timms appeared before the Disciplinary Hearing Officer ("DHO") for being insolent towards a staff member. Id. at 3. The DHO found that Timms committed the prohibited act, and sanctioned him to 15 days disciplinary segregation, one year loss of commissary privileges, phone privileges and visitation privileges. All of the one year sanctions were suspended for 180 days. Id. at 3.

On November 1, 2010, Timms appeared before the DHO for possessing an unauthorized item, i.e., a non-hazardous tool. Id. at 2. The DHO found that Timms committed the prohibited act, and sanctioned him to one day disciplinary segregation, one day loss of commissary privileges, visitation privileges and telephone privileges. Id. Timms was also sanctioned with 14 days disciplinary segregation, which was suspended for 180 days. Id.

On October 31, 2011, Timms appeared before the DHO for possessing drugs/alcohol. Id. at

2. He was found guilty and was sanctioned with 5 days disciplinary segregation, a $100.00

monetary fine (which was suspended for 180 days) and 90 additional days of disciplinary segregation

(which was suspended). Id.

On December 1, 2011, Timms appeared before the DHO for interfering with security devices.

Id. at 2. The DHO found that Timms committed the prohibited act, and sanctioned him to 30 days

disciplinary segregation which was suspended. Id. However, due to this offense occurring within

180 days of his previous suspended sanctions, the DHO also sanctioned Timms with one day in

disciplinary segregation and $100.00 in monetary fines. Id.

On March 12, 2012, Timms appeared before the UDC and admitted guilt to possessing an

unauthorized item – inappropriate pictures. Id. at 1-2. The UDC found that Timms committed the

prohibited act, and sanctioned him to the loss of commissary privileges for 90 days. Id.

On May 3, 2012, Timms appeared before the UDC and admitted guilt to possessing an

unauthorized item. Id. at 1. The UDC found that Timms committed the prohibited act, and

sanctioned him to the loss of email privileges for 120 days. Id. This was to be served consecutively

to his previous sanction. Id.

On July 9, 2012, Timms appeared before the UDC and admitted guilt to being in an

unauthorized area. Id. at 1. The UDC found that Timms committed the prohibited act, and

sanctioned him to the loss of email privileges for 60 days. Id. This was to be served concurrently

to his previous sanction. Id.

On January 14, 2013, Timms appeared before the UDC and admitted guilt to possessing an

unauthorized item – razor blades, a flame emitting device, and other prohibited items. Id. at 1. The

UDC found that Timms committed the prohibited act, and sanctioned him to the loss of commissary

7

privileges for 90 days. Id.

On July 16, 2013, Timms appeared before the UDC and admitted guilt to giving/accepting money without authorization. Id. at 1. The UDC found that Timms committed the prohibited act, and sanctioned him to the loss of commissary privileges for 90 days. Id.

Generally, "placement [of a civil detainee] in a prison, subject to the institution's usual rules of conduct, [does not per se] signify punishment . . . ." Allison, 332 F.3d at 1079; see Lucas v. Rivera, No. 2:08-3373-HFF-RSC, 2009 WL 902355, at *2 (D.S.C. Mar. 31, 2009) (holding that a prisoner "has no right protected by the constitution to buy items at the lowest price possible." (footnote omitted)). Furthermore, civil detainees are subject to the same security policies as those used at correctional facilities. Allison, 332 F.3d at 1079 ("If pretrial detainees may be subjected to the ordinary conditions of confinement, as [Bell v. Wolfish, 441 U.S. 520 (1979)] holds, then so may persons detained as sexually dangerous persons.").

Specifically, the Supreme Court in Sandin v. Conner, 515 U.S. 472 (1995) has upheld disciplinary segregation – even without a "due process" hearing – as a valid way to further both security and rehabilitative goals. And although, the Fourth Circuit Court of Appeals has not addressed the issue, the Third Circuit Court of Appeals has determined that the placement in segregation of a person civilly committed pursuant to a state Sexually Violent Predator Act does not violate the Due Process clause unless the deprivation is in some way extreme. Deavers v. Santiago, 243 F. App'x 719, 721 (3d Cir. 2007); see Cruz v. Main, No. 10-5605 (SDW), 2011 WL 3625068, at *5 (D.N.J. Aug. 15, 2011). Timms does not allege any extreme deprivation. Rather, he simply contests his placement into solitary confinement for disciplinary infractions, and his is not sufficient to state a claim upon which relief may be granted. See, e.g., Cruz, 2011 WL 3625068 at * 5.

8

The court further notes, as argued by defendant, that when his commissary privileges were sanctioned, he was not completely barred from ordering items. Dep. Timms at 37.

Thus, this claim fails and Warden Tracy Johns is shielded by qualified immunity for any participation in, or effectuation and enforcement of, BOP policy.

### iii.    Mail Restrictions

Timms contests the BOP's policy of monitoring his mail. Dep. Timms, at 28. Civil detainees have a First Amendment right of free speech to send and receive mail. Hudson v. Palmer, 468 U.S. 517, 547 (1984). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 125 (1977). Restrictions on an inmate's constitutional rights are valid "if [they are] reasonably related to legitimate penological interests." Turner v. Safely, 482 U.S. 78, 89 (1987).

BOP policy provides that "outgoing mail from a pretrial inmate may not be sealed by the inmate and may be inspected by staff." 28 C.F.R. § 540.14(b). This policy is intended "to provide for the continued efficient and secure operation of the institution and to protect the public." 61 Fed. Reg. 64954-01. The BOP applies this policy to civil detainees because they pose a certain degree of flight risk, and "the unsettled nature of their status may lead to misuse of the correspondence privilege." Id. The court finds that the BOP's policy regarding outgoing mail is reasonably related to legitimate penological interests. See Smith v. Delo, 995 F.2d 827, 830-31 (8th Cir. 1993) (policy requiring non-privileged mail to be unsealed so that it could be inspected for contraband and proper addressing did not violate the constitution); see, e.g., Weatherspoon v. Ferguson, 398 F. App'x 7, at *2 (5th Cir. 2010); Brown v. Hedrich, No. 10-CV-1089, 2012 WL 1995126, at *6 (E.D. Wis. May

9

31, 2012). Thus, the court finds that Timms' claim regarding the monitoring of his mail fails to state a claim upon which relief may be granted.

      iv.    Housing searches

Timms alleges that he is subject to random "mass shakedowns." Dep. Timms at 46. Timms fails to show that any person violated BOP policy by conducting such searches, or that the BOP did not use its professional judgment in applying its search policy to the civilly committed inmates. See Youngberg, 457 U.S. at 321-22. Pursuant to BOP Program Statement 5521.05, which applies to the civilly committed inmates, staff may search an inmate's housing and work area, and personal items contained within those areas, without notice to or prior approval from the inmate and without the inmate's presence. See Andrews Decl., ¶ 22. These inspections should occur routinely, but irregularly, since they are designed primarily to detect contraband, prevent escapes, maintain sanitary standards, and eliminate fire and safety hazards. Id.

Furthermore, courts have generally upheld policies that subject civilly committed sexually dangerous persons to random cell searches for both security and rehabilitation purposes. See Barber v. Christie, 2010 WL 2723151, at *14; Semler v. Ludeman, 2010 WL 145275, at *21-22. Courts have also generally upheld bans on the right of sexually dangerous persons to possess sexually explicit material because of the legitimate treatment interest in doing so. See Burch v. Jordan, No. 07-3236, 2010 WL 5391569, at *21 (D. Kan. Dec. 22, 2010); see Marten v. Richards, No. C09-5733 RBL/JRC, 2010 WL 2650547, at *3-4 (W.D. Wash., June 2, 2010); Gilmore v. Kansas, No. 03-3222-JAR, 2004 WL 2203458, at *5 (D. Kan. Sept. 27, 2004). Thus, this claim fails and Warden Tracy Johns is shielded by qualified immunity from Timms' cell search claim.

10

v.   The Monitoring of E-mail and Telephone

In the civil commitment context, courts have repeatedly upheld institutional rules concerning restrictions electronic access. See, e.g., Rivera, 224 F. App'x at 151 (3d Cir. 2007); Graham v. Main, Civil Action No. 10-5027(SRC), 2011 WL 2412998, at *13–14 (D.N.J. June 9, 2011) (unpublished); Burch, 2010 WL 5391569, at *21 (unpublished); Semler, 2010 WL 145275, at *9–16 (unpublished). And again, as stated above,"[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." Jones, 433 U.S. at 125.. Restrictions on an inmate's constitutional rights are valid "if [they are] reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. Thus, any monitoring of e-mail and telephone is not a constitutional infringement against Timms.

vi.   Limited Recreational Opportunity

Timms argues that his recreation is "severely restricted to approximately 15 ½ hours per week." Compl. at 5. Timms has not alleged that he was denied all recreation or access, only that he does not have unfettered access to recreational opportunities. This does make out a viable claim. Cf. Rainwater v. McGinniss, No. 2:10- cv-1727GGH P, 2012 WL 3276966, at *11–12 (E.D. Cal. Aug. 9, 2012) (unpublished); Creveling v. Johnson, Civil Action No. 11-667(SDW), 2011 WL 3444092, at *5–6 (D.N.J. Aug. 4, 2011) (unpublished); see Fortune v. Hamberger, 379 Fed. App'x 116, 122 (3d Cir. 2010) ("Even a minimal provision of time for exercise and recreation may satisfy constitutional requirements"); Gattis v. Phelps, 344 Fed. App'x 801, 805 (3d Cir. 2009) ("Gattis' alleged harm-that his exercise was limited to three days per week and that he was not guaranteed outdoor exercise at all times-was insufficiently serious to implicate the Eighth Amendment"). Defendant is again shielded by qualified immunity as to this claim.

11

<u>Conclusion</u>

Accordingly, defendant Johns' motion for summary judgment is GRANTED [D.E. 74]. This concludes the case, and the Clerk is DIRECTED to close the action. Having so determined, all of Timms' pending motions are DENIED as MOOT [D.E. 47, 48, 53, 54, 63, 66, 67, 68, and 69].

SO ORDERED, this the _13_ day of December 2013.

TERRENCE W. BOYLE
United States District Judge